UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SOL-ARK, LLC | § | |
| | § | |
| v. | § | CIVIL NO. 4:26-CV-225-SDJ |
| | § | |
| FORD MOTOR COMPANY | § | |

# MEMORANDUM OPINION AND ORDER

Plaintiff Sol-Ark, LLC and Defendant Ford Motor Company had a multi-year business relationship centered on the development of technology allowing a Ford battery electric vehicle to supply power to a residence. After terminating the relationship Ford filed suit against Sol-Ark in the United States District Court for the Eastern District of Michigan in October 2025 (the "Michigan action"). In the Michigan action, Ford alleges, among other claims, that Sol-Ark violated the federal Defend Trade Secrets Act ("DTSA") and the Michigan Uniform Trade Secrets Act ("MUTSA"), as well as contractual agreements between the parties, by misappropriating and disclosing Ford's trade secrets in several patent applications. Several months later, in March 2026, Sol-Ark filed this lawsuit against Ford in the Eastern District of Texas (the "Texas action"). In the Texas action, Sol-Ark asserts, among other claims, that Ford violated the DTSA, fraudulently induced Sol-Ark into entering the agreements Ford relies on in the Michigan action, and engaged in unfair competition by misappropriating Sol-Ark's trade secrets in several patent applications.

Invoking the first-to-file rule and other transfer theories, Ford has filed a Motion to Transfer Venue. (Dkt. #13). The Motion is fully briefed. (Dkt. #15)

(Plaintiff's Response in Opposition); (Dkt. #20) (Defendant's Reply); (Dkt. #23) (Plaintiff's Sur-Reply). Because the issues in the Texas action and the Michigan action substantially overlap, the first-to-file rule applies and the Motion to Transfer will be granted.

## I. Background

Start with what the parties agree on. They agree that, in 2022, Ford was interested in developing electric vehicle technology, including systems that would allow vehicles to supply power to a home during an outage. Ford brought in Sol-Ark to help it accomplish this goal. From here, the parties' narratives diverge, although they both agree that two documents they executed are central to their dispute; a Confidentiality and Non-Disclosure Agreement ("NDA"), and a Statement of Work ("SOW"). The parties also acknowledge that the NDA was designed to protect Ford's and Sol-Ark's confidential information.

According to Ford, before bringing in Sol-Ark, Ford had developed designs for a "Home Energy Management System" ("HEMS") and an energy "Combiner Box" configured to use a Ford Battery Electric Vehicle ("BEV") as a back-up energy source for a home in the event of a power outage. (Dkt. #13 at 8). In Ford's telling, it brought in Sol-Ark, in November 2022, as a potential supplier to manufacture Ford's HEMS and Combiner Box designs. (Dkt. #13 at 9). In Sol-Ark's view, Ford lacked the engineering knowledge and expertise to develop the home energy management system that it wanted to sell, and while Ford had a concept of what it wanted the system to do, Ford lacked a practical or cost-effective way to design and commercialize

the system. (Dkt. #15 at 6). Thus, as told by Sol-Ark, Ford sought Sol-Ark's engineering expertise, industry knowledge, and supplier connections to transform Ford's concept into reality. (Dkt. #15 at 7). The common theme is that both companies saw a mutually beneficial business opportunity and entered the NDA to facilitate the exchange of proprietary information. (Dkt. #13 at 9); (Dkt. #15 at 7).

The exchange of information and expertise continued over the next two years, while both Ford and Sol-Ark, apparently unbeknownst to each other, filed multiple patent applications for inventions related to their work on Ford's HEMS project. (Dkt. #13 at 10); (Dkt. #1 at 12). In March 2024, the parties entered a "production contract," including the SOW, subject to Ford's Production Global Terms and Conditions ("GT&C"). (Dkt. #1 at 10); (Dkt. #13 at 9); (Dkt. #15 at 7).[1]

Ford and Sol-Ark continued to collaborate and apparently file their competing patent applications throughout 2024. (Dkt. #1 at 12); (Dkt. #13 at 10). In early 2025, after Ford became aware of Sol-Ark's patent applications, it sent a letter to Sol-Ark alleging that Sol-Ark had incorporated Ford's confidential and trade secret information in its patent filings. (Dkt. #13 at 11); (Dkt. #15 at 9). Sol-Ark denied Ford's allegations and the parties exchanged a series of letters setting forth their contrary contentions. (Dkt. #15 at 9). During this period Ford's attorneys gave a presentation to Sol-Ark executives supporting its assertion that Sol-Ark had compromised Ford's trade secrets. (Dkt. #15 at 9). Sol-Ark responded by conducting

[1] Both the NDA and the GT&C contain forum selection clauses which identify specific Michigan federal and state courts as the proper forums. (Dkt. #13 at 9, 10). The parties dispute the enforceability of the forum selection clauses in the NDA and GT&C. (Dkt. #13 at 12–21); (Dkt. #15 at 10–14).

an internal investigation, following which Sol-Ark reaffirmed that Ford's allegations "had no merit." (Dkt. #15 at 9).

In September 2025 Ford terminated its business relationship with Sol-Ark, and the next month it sent Sol-Ark a letter expressing Ford's willingness to "resolve [the] matter in an amicable manner." (Dkt. #17-5 (sealed)). But on the same day Ford filed suit in the Michigan action. (Dkt. #13 at 11); (Dkt. #15 at 10). In the Michigan action, Ford alleges that Sol-Ark: (1) violated the DTSA, 18 U.S.C. § 1836, (2) violated the MUTSA, M.C.L. § 445.1901; and (3) breached the NDA and the GT&C. (Dkt. #13-6). The crux of each of Ford's claims against Sol-Ark is that Ford shared its confidential and trade secret information with Sol-Ark concerning Ford's HEMS and Combiner Box designs, which Sol-Ark then misappropriated and disclosed by incorporating Ford's alleged trade secrets in Sol-Ark's patent applications.

Sol-Ark filed the instant suit about five months later, in March 2026. Sol-Ark alleges that Ford: (1) violated the DTSA; (2) fraudulently induced Sol-Ark into entering "illusory" agreements with Ford; (3) tortiously interfered with Sol-Ark's active and prospective business relationships; (4) engaged in common law unfair competition by misappropriation; (5) misappropriated Sol-Ark's trade secrets; and (6) committed the tort of conversion by intentionally exercising dominion over Sol-Ark's proprietary information. (Dkt. #1). Sol-Ark also asserts related claims for unjust enrichment and quantum meruit. (Dkt. #1 at 16–26). The gravamen of Sol-Ark's claims is the inverse of Ford's allegations. Sol-Ark maintains that Ford filed patent applications that misappropriated and disclosed Sol-Ark's confidential

information related to Sol-Ark's designs, specifications, and other trade secrets related to home energy managements systems, which Sol-Ark provided under the protection of the parties' NDA. (Dkt. #1 at 16–18). Sol-Ark further contends that Ford had no intention of fulfilling its own obligations under the parties' agreements, and instead induced Sol-Ark into entering the agreements so that Ford could "steal Sol-Ark's technical solutions, put those solutions into Ford's patent applications, and [] obtain Sol-Ark supplier, parts and costs lists and misappropriate such information for its own purposes and to compete with Sol-Ark in a field in which Ford had never before succeeded." (Dkt. #1 at 18–19). This alleged misconduct, together with Sol-Ark's claim that Ford also misappropriated Sol-Ark's trade secrets by "incorporating them into Ford's Home Management Platform," (Dkt. #1 at 24), is the foundation of all Sol-Ark's claims against Ford. (Dkt. #1 at 16–26).

In its venue-transfer motion, Ford asks that this case be transferred to the Eastern District of Michigan. The request is premised on forum-selection clauses in the NDA and the GT&C, as well as the first-to-file rule. In the alternative, Ford argues that Sol-Ark's complaint should be dismissed under Federal Rule of Civil Procedure Rule 12(b)(6) for "lack of plausible facts supporting" Sol-Ark's claims. (Dkt. #13). Because the first-to-file rule applies and warrants transfer of this case to the Eastern District of Michigan, Ford's remaining arguments need not be addressed.

## II. Legal Standard

The first-to-file rule is a discretionary doctrine resting on "principles of comity and sound judicial administration." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d

599, 603 (5th Cir. 1999). It has long been recognized that "the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (quotation omitted). "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24*, 751 F.2d 721, 729 (5th Cir. 1985). As applied, the first-to-file rule is "forward-looking," seeking to "maximize judicial economy" and avoid inconsistent results by ensuring that "substantially overlap[ping]" issues are decided in the same federal forum. *Cadle Co.*, 174 F.3d at 603–04.

Applying the first-to-file rule does not require that the cases at issue be identical or that the cases have identical parties. *Syntek*, 121 F.3d at 950–51. Instead, to decide whether substantial overlap exists, courts have looked at factors such as whether the core issue in each case is the same or if much of the proof adduced would likely be identical. *Int'l Fid. Ins. Co. v. Sweet Little Mex. Corp.*, 665 F.3d 671, 78 (5th Cir. 2011) (quotations omitted). When the overlap between claims is less than complete, courts consider several other factors, including the extent of the overlap, the likelihood of conflict, and the "comparative advantage and interest of each forum in resolving the dispute." *Id.* (quotations omitted). These other factors are applied on a "case by case" basis. *Id.* (quotations omitted).

## III. Discussion

The application of the first-to-file rule is about as straightforward as it gets in this case. The Michigan action and the Texas action involve the same parties, the same agreements, and the same underlying, failed business relationship. And in both cases, all causes of action asserted by the parties are grounded on mirror-image claims for misappropriation of trade secrets. For several years Ford and Sol-Ark worked together and shared information on a project involving electric vehicle technology, particularly systems that would allow vehicles to supply power to a home. Ford argues that trade secrets it shared in this process, protected by the parties' NDA, were misappropriated by Sol-Ark and disclosed in several patent applications. Sol-Ark levels the same accusation against Ford, claiming that Ford misappropriated Sole-Ark's trade secrets shared during the parties' collaborative process, and protected by the NDA, and that Ford disclosed such trade secrets in several patent applications.

There can be no doubt that the issues in the Michigan action and the Texas action substantially overlap, and there are no extenuating circumstances suggesting that the Court should not apply the first-to-file rule. It is undisputed that the Eastern District of Michigan obtained jurisdiction first when the Michigan action was filed over a year ago. Under the circumstances, the Texas action will be transferred to Judge Terrence G. Berg in the Eastern District of Michigan to determine how the Michigan action and the Texas action should proceed.

### A. The first-to-file rule warrants transfer to the Eastern District of Michigan.

The first-to-file rule involves a two-step analysis: "(1) are the two pending actions so duplicative or involve substantially similar issues that one court should decide the subject matter of both actions; and (2) which of the two courts should take the case." *Tex. Instruments, Inc. v. Micron Semiconductor, Inc.*, 815 F.Supp. 994, 997 (E.D. Tex. 1993). The Court will take each question in turn.

#### i. The Michigan action and the Texas action substantially overlap.

The first-to-file rule allows a federal court to refuse to hear newly filed claims when the same claims, or substantially overlapping claims, are already pending in another federal court. *Guenther v. BP Ret. Accumulation Plan*, 50 F.4th 536, 541 n.3 (5th Cir. 2022) (per curiam); *Sweet Little Mex. Corp.*, 665 F.3d at 677–78. Ford argues the claims at issue in the Michigan action and the Texas action substantially overlap because the parties are identical and the claims arise from the same relationship, the same agreements, and the same alleged conduct. (Dkt. #13 at 22). For its part, Sol-Ark contends that the similarity between these cases ends with the named parties; instead, according to Sol-Ark, the cases involve "fundamentally different legal theories and burdens of proof" and "distinct claims arising from different alleged conduct by different actors over different time periods." (Dkt. #15 at 15) (emphasis removed). The Court agrees with Ford.

At the outset, the parties in both cases are identical. *See AmberWave Sys. Corp. v. Intel Corp.*, No. 2:05-CV-321, 2005 WL 2861476, at *2 (E.D. Tex. Nov. 1, 2005) (concluding that there was a likelihood of substantial overlap between the two

cases in part because the parties were the same); *Le-Vel Brands, LLC v. R&D Glob., LLC*, No. 4:20-CV-420-SDJ, 2021 WL 963738, at *4 (E.D. Tex. Mar. 15, 2021) ("The fact that the two cases effectively involve the same parties increases the likelihood of substantial overlap."). In the Michigan action, Ford is the sole plaintiff and Sol-Ark is the sole defendant. (Dkt. #13-6 at 2). In the Texas action, the inverse is true. (Dkt. #1 at 1). The existence of identical parties tends to show a likelihood of substantial overlap.

Next, both cases primarily involve alleged misappropriation of confidential information shared between Sol-Ark and Ford. *Compare* (Dkt. #1 ¶ 1) (Texas Complaint) *with* (Dkt. #13-6 ¶ 1) (Michigan Complaint). In the Michigan action, Ford alleges Sol-Ark misappropriated and disclosed Ford's confidential information in Sol-Ark's patent applications. (Dkt. #13-6 ¶¶ 28–35). In the Texas action, Sol-Ark alleges Ford misappropriated and disclosed Sol-Ark's confidential information in Ford's patent applications. (Dkt. #1 at 17). Both cases will involve a review of each party's patent applications and whether or not such applications include the other side's confidential information or trade secrets that were shared during the course of the parties' relationship. Discovery into what confidential information was shared, who shared it and who received it, how it was to be used, and whether the underlying patent applications include protected trade secrets that were shared during the course of the relationship necessarily means there are central questions of commonality between the two cases. *See Le-Vel Brands, LLC*, 2021 WL 963738, at *4

(noting one of the factors for determining substantial overlap is "whether much of the evidence produced will be the same").

Further, while only some of the patent applications at issue have been filed in these cases, specifically in the Michigan action, based on the record in both cases and the parties' pleadings and briefing it appears that the underlying patent applications concern inventions closely related to the subject matter of Ford and Sol-Ark's collaboration, i.e., home energy management systems and related energy management systems. (Dkt. #1 ¶ 31); (Dkt. #17-1 at 3) (sealed); (Dkt. #18-1 at 3) (public redacted version of Dkt. #17-1); *see also Ford Motor Company v. Portable Solar LLC, d/b/a Sol-Ark*, U.S. District Court for the Eastern District of Michigan, Cause Number 2:25-cv-13296 (Docket #18-3, #18-4, #18-5). In a similar case, *AmberWave Sys. Corp.*, the court found that the first-to-file rule applied because the "subject matter [was] closely related" even though "[t]he patents address different scientific aspects, mechanical engineering and electrical engineering, of semiconductor transistors." 2005 WL 2861476, at *2; *see Le-Vel Brands, LLC*, 2021 WL 963738, at *4 (transferring the case after finding that "although the trademark-infringement claims asserted in both actions are not identical, they do involve closely related subject matter and raise potentially similar questions").

Finally, both cases involve rights, obligations, and enforceability under the NDA, SOW, and GT&C. *Compare* (Dkt. #1 ¶¶25–33, 60) (Texas Complaint) *with* (Dkt. #13-6 ¶¶ 70–86) (Michigan Complaint). Ford alleges Sol-Ark breached at least some of these agreements. (Dkt. #13-6 ¶¶ 70–86). Sol-Ark, on the other hand, alleges

both that it was fraudulently induced into these agreements and that Ford violated the NDA when it disclosed Sol-Ark's confidential information in Ford's patent applications. (Dkt. #1 ¶¶25–33). The disputes in both cases center on these contracts and the interplay between them. *See Lear Siegler Servs. v. Ensil Int'l Corp.*, No. SA-05-CA-0679-XR, 2005 WL 2645008, at *2 (W.D. Tex. Sept. 20, 2005) ("Because the same eight repair order contracts are before both courts, there is also the danger of piecemeal resolution with inconsistent results."); *cf. Maestro Integrations, LLC v. Am. Fire Wire, Inc.*, No. 1:25-CV-35-RP, 2025 WL 3251720, at *3 (W.D. Tex. Oct. 6, 2025) (finding no substantial overlap because the two contracts at issue in the two cases "are in no way intertwined").

Even assuming *arguendo* that the Michigan action and the Texas action do not perfectly overlap, the first-to-file rule need not have identical cases for it to apply. *See Syntek*, 121 F.3d at 950–51. Rather, the cases must substantially overlap. That standard is met here. Both cases arise out of the same nucleus of operative fact: (1) the parties entered into the NDA and SOW, and according to Ford the GT&C as well, (2) the parties exchanged their own intellectual property under the NDA, (3) the parties each allege that the other side misappropriated intellectual property that was shared under the protection of the NDA and related to the Ford HEMS project. Given the common operative facts, it is unsurprising that the parties' primary causes of action against each other in the Michigan action and the Texas action are mirror-image misappropriation-of-trade-secret claims under statutory and common law theories. And for both Ford and Sol-Ark, all the claims leveled against each other rest

on the same foundation: the misappropriation of trade secrets obtained under the NDA and during the parties' business relationship.

The fact that the parties allege competing legal theories with varying burdens of proof does not impact the first-to-file analysis. As Ford correctly notes, parties routinely file counterclaims showcasing different legal theories and burdens of proof stemming from the same facts. *See* (Dkt. #20 at 9); *see also* FED. R. CIV. P. 13. The question for the court is whether the underlying issues substantially overlap. *See AmberWave Sys. Corp.*, 2005 WL 2861476, at *1 ("The first-to-file rule applies when the two actions involve closely related questions or subject matter or the core issues substantially overlap, but the core issues do not need to be identical."). Here, after review of both the Texas Complaint and the Michigan Complaint, the Court concludes that "it is unquestionable that the two actions are duplicative and overlap substantially if not completely." *Cal. Sec. Co-Op, Inc. v. Multimedia Cablevision, Inc.*, 897 F.Supp. 316, 318 (E.D. Tex. 1995).

**ii. The Eastern District of Michigan should hear the case.**

Once the Court has determined there is substantial overlap between the two cases, the Court must determine which court should hear the case. "The Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Syntek*, 121 F.3d at 950; *see Tex. Instrument, Inc.*, 815 F.Supp. at 997. ("[T]he rule is that the court first seized of jurisdiction over a dispute should be permitted to adjudicate that controversy fully.").

Here, the Michigan action was filed on October 17, 2025. (Dkt. #15 at 18). The Texas action was filed on March 4, 2026. (Dkt. #1). As the court administering the first-filed case, the Eastern District of Michigan should also administer the Texas action to determine how the cases should proceed. *See Syntek*, 121 F.3d at 950; *Le-Vel Brands, LLC*, 2021 WL 963738, at *4.

**B. There is no reason to depart from the first-to-file rule.**

Sol-Ark argues that the first-to-file rule should not apply because Ford engaged in "bad faith conduct, by inducing an opposing party to delay filing of a lawsuit, so that a preemptive lawsuit could be filed." (Dkt. #15 at 17) (citing *Gonzalez v. UnitedHealth Grp., Inc.*, No. 6:19-cv-00700-ADA, 2020 WL 2992174, at *4 (W.D. Tex. June 3, 2020)). Specifically, Sol-Ark contends that "Ford preemptively filed the Michigan lawsuit about a week before it started widely publicizing its 'new' Home Power Management system [which allegedly uses Sol-Ark's technology]" (the "October 2025 Press Release") after negotiations broke down between the parties in their attempt to reach an "amicable resolution." (Dkt. #15 at 19). Sol-Ark's argument is unpersuasive.

Courts have recognized a limited exception to the first-to-file rule which prevents a litigant from depriving the "true plaintiff" of his right to select the proper forum. *See Strukmyer, LLC v. Infinite Fin. Sols, Inc.*, No. 3:13-cv-3798-L, 2013 WL 6388563, at *7 (N.D. Tex Dec. 5, 2013). Often, but not always, these preemptive filings come in the form of actions for declaratory judgment. *Id.* (observing "courts have recognized [a] limited exception to the first-to-rule for 'anticipatory' declaratory judgment actions filed for an abusive or improper reason" (citing *Paragon Indus.,*

*L.P. v. Denver Glass Mach., Inc.*, No. 3:07-cv-2183-M, 2008 WL 3890495, at *4 (N.D. Tex. Aug. 22, 2008))). "But even '[m]erely filing a declaratory judgment action in a federal court with jurisdiction to hear it . . . is not in itself improper anticipatory litigation or otherwise abusive forum shopping.'" *Id.* (quoting *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 391 (5th Cir. 2003)).

No such concern is present here. To begin, long before filing suit Ford notified Sol-Ark of its alleged breach of the NDA and GT&C, which ultimately formed the basis of the Michigan action. (Dkt. #20 at 10). Further, Ford did not file a declaratory action or otherwise attempt to prevent Sol-Ark from raising the claims it has made in the Texas action. Like the defendant in *Strukmyer*, Ford filed affirmative claims against Sol-Ark. *Strukmyer, LLC*, 2013 WL 6388563, at *7 ("Defendants may have filed in anticipation of Plaintiff's threatened lawsuit in Texas, but they did not merely file a declaratory judgment action to fix venue in advance of Plaintiff's filing its own lawsuit. Rather, after serving their own demand letter, the Nevada plaintiffs filed suit alleging a number of substantive causes of action."). In sum, Sol-Ark provides no credible argument that the Michigan action constitutes some type of improper anticipatory filing that would suggest the first-to-file rule should not be applied.

Likewise, Ford's filing of the Michigan action was not bad faith forum shopping, particularly given that the NDA and GT&C both include forum selection clauses that identify Michigan federal and state courts as the proper venue. (Dkt. #13 at 9, 10). Regardless of the enforceability of such venue selection clauses, Sol-Ark can hardly claim surprise or ill intent concerning Ford's initiation of ligation—after

months of failed negotiations to resolve the parties' dispute—in the very forum identified in the parties' contracts. Sol-Ark has presented no persuasive evidence or argument that the limited, bad faith exception to the first-to-file rule applies.

## IV. CONCLUSION

It is therefore **ORDERED** that Defendant's Motion to Transfer, (Dkt. #13) is **GRANTED in part**. Defendant's request that this case be transferred to the Eastern District of Michigan is **GRANTED**. The motion is otherwise **DENIED as moot**.

It is further **ORDERED** that this case is hereby **TRANSFERRED** to the docket of Judge Terrence G. Berg in the Southern Division of the Eastern District of Michigan.

**So ORDERED and SIGNED this 6th day of November, 2026.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE